## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SCIMED LIFE SYSTEMS, INC.,                )
                                          )
   Plaintiff and Counterclaim-Defendant ,   )
                                          )
               v.               )
                                          )
                                          )
MEDTRONIC VASCULAR, INC.,                 )
                                          )   Civil Case No.  01-2015 (RJL)
   Defendant and Counterclaim-Plaintiff,    )
                                          )
                                          )
            and            )
                                          )
ERIC C. MARTIN,                           )
                                          )
   Defendant and Counterclaim-Defendant.    )

## MEMORANDUM OPINION
(March 31, 2006) [# 76, 100, 102, 103]

Plaintiff, Scimed Life Systems, Inc. ("Scimed"), brought this action against defendants, Medtronic Vascular, Inc. ("Medtronic") and Eric C. Martin, under Title 35 of the United States Code Section 146, challenging the Final Decision and Judgment of the Board of Patent Appeals and Interferences (the "Board") of the United States Patent and Trademark Office ("USPTO") regarding Patent Interference No. 104,192 between certain patent applications for an apparatus for reinforcing a bifurcated lumen.  Presently before the Court are Medtronic's Motion for Summary Judgment, Scimed's First and Second Motions for Summary Judgment, and Medtronic's Motion to Compel Production of Documents and

Things.  After due consideration of the parties' submissions, the relevant law and the entire record herein, the Court finds that the Board did not erroneously affirm its Grant of the Fogarty *et al.* United States Patent Application Serial No. 08/463,836 (now owned by Medtronic) Motion 12 in its July 27, 2001 Final Decision and Judgment.  Accordingly, this Court affirms the Board's Final Decision and Judgment and, therefore, GRANTS Medtronic's Motion for Summary Judgment, DENIES Scimed's First and Second Motions for Summary Judgment, and DENIES AS MOOT Medtronic's Motion to Compel Production of Documents and Things.

## I.   BACKGROUND

Plaintiff Scimed and defendant/counterclaimant Medtronic are each assignees of record of two different patent applications for a bifurcated lumen invention.[1]  Andrew Cragg and Michael Dake (collectively referred to as party "Cragg" in the underlying proceedings at the USPTO) filed an application with the USPTO regarding the bifurcated lumen apparatus on June 5, 1995.  The application was assigned the serial number 08/461,402 (the "'402 application").  Cragg and Dake assigned all rights in the '402 application to Boston Scientific Technology, Inc., which later merged into plaintiff Scimed.  Scimed is now the present legal owner of the '402 application.  Medtronic was assigned its rights in a patent application for the same invention by Thomas J. Fogarty, Timothy J. Ryan, and Kirsten Freislinger (collectively referred to as party "Fogarty" in the underlying proceedings at the

---

[1]      The "Background" section of this Memorandum Opinion has been partially adapted from this Court's earlier Memorandum Opinion in *Scimed Life Systems, Inc. v. Medtronic Ave Inc.*, 297 F. Supp. 2d 4 (D.D.C. 2003).

USPTO).  That application was also filed with the USPTO on June 5, 1995, and assigned the

serial number 08/463,836 (the "'836 application").  Party Fogarty assigned its rights in the

'836 application to Medtronic Aneurx, Inc., which merged into Medtronic AVE, Inc. which

later became the defendant/counterclaimant Medtronic.  Medtronic is now the legal owner

of the '836 application.  Defendant/counterclaim-defendant Eric Martin owns patent No.

5,575,817 (the "Martin" or "'817 patent"), based on application 08/293,541, filed on August

19, 2004.

On April 23, 1998, the USPTO Board declared an interference between Scimed's

patent application (the "Cragg" or "'402 application"), Medtronic's patent application (the

"Fogarty" or "'836 application") and the Martin patent.  This interference proceeding was

assigned Interference No. 104,192, and is referred to as the "'192 interference."[2]  On July 2,

1998, the Board set the following as the sole "count"[3]:

> An apparatus for reinforcing a bifurcated lumen comprising:
> a first section, configured to be positioned within the lumen, comprising:
> an upper limb, configured to fit within the lumen upstream of the bifurcation;
> a first lower limb, configured to extend into the first leg of said bifurcation
> when said first section is positioned in the lumen, and

---

[2]    "The purpose of an interference proceeding is to resolve the question of priority of invention
when more than one applicant seeks a patent on substantially the same invention." 3A-10 Donald S.
Chisum, Chisum on Patents § 10.09[1][a] (2006). This action was brought in federal Court pursuant to 35
U.S.C. § 146, which allows a party dissatisfied with the decision of the Board in an interference to bring
a civil action as long as the Board's decision is not being appealed to the United States Court of Appeals
for the Federal Circuit "and such appeal is pending or has been decided." *See* 35 U.S.C. § 146.

[3]    "A count defines the interfering subject matter. In *In re Van Geuns* (1993), the Federal Circuit
noted that (1) '[a]lthough claims of one or more of the parties may be identical to the count of an
interference, the count is not a claim to an invention,' and (2) '[t]he count of an interference is merely the
vehicle for contesting the priority of invention and determining what evidence is relevant to the issue of
priority.'" 3A-10 Donald S. Chisum, Chisum on Patents § 10.09[3] (2006).

a second lower limb, shorter that said first lower limb, and configured so that when said first section is positioned in the lumen, said second lower limb does not extend into a second leg of said bifurcation, and further comprising a second section configured to be positioned separately within the lumen and joined to said second lower limb of the first section, effectively extending said second lower limb into said second leg of said bifurcation.

*Cragg et al. v. Martin v. Fogarty et al.*, Patent Interference No. 104,192, Paper No. 187, Final Decision and Judgment at 5-6 (United States Patent and Trademark Office, Board of Patent Appeals and Inferences July 21, 2001)("Board's Final Judgment"). The purpose of the '192 Interference was for the Board to determine who among the three parties had priority of inventorship, and was, therefore, entitled to the invention defined by the count.

At the time of declaration of the interference, party Cragg was accorded by the USPTO the benefit of the filing dates of two European patent applications (i.e. February 9 and June 10, 1994), which had been filed by a French Company known as Mintec SARL. At the time of declaration of the interference, party Fogarty, on the other hand, was accorded by the USPTO the benefit of the earlier filing date of U.S. patent application 08/255,681: i.e. on June 8, 1994. Thus, at the start of the interference, party Cragg was designated the "senior party,"[4] on the basis of the accorded benefit date of February 9, 1994. On March 13, 2000, party Fogarty filed a preliminary motion attacking the benefit accorded party Cragg to

---

[4]    "In an interference proceeding, the first party to file is designated as the 'senior party' and all other parties as 'junior.' The junior party bears the burden of going forward with evidence as to actual reduction to practice prior to the senior party's filing date or conception prior to the senior party's filing date plus continuous and reasonable diligence during the critical period. If the senior party desires to show a date of conception or reduction to practice prior to his filing date, he bears the burden of going forward with evidence." 3A-10 Donald S. Chisum, Chisum on Patents § 10.03[1][c][ii] (2006).

the filing dates of the two European applications and sought to be made the senior party in the interference. On April 7, 2000, the Board granted party Fogarty's preliminary motion 12, declaring party Fogarty the senior party in the interference and party Cragg and party Martin as junior parties in the interference. *Cragg et al. v. Martin v. Fogarty et al.*, Patent Interference No. 104,192, Paper No. 130, Decision on Party Cragg's Motion to Correct the Preliminary Statement and on Party Fogarty's Preliminary Motion No. 12 at 7 (United States Patent and Trademark Office, Board of Patent Appeals and Inferences April 24, 2000)("Decision on Preliminary Motion No. 12"). In that same opinion, the Board denied party Cragg's motion to amend its preliminary statement to name Michael D. Dake and Andrew H. Cragg as co-inventors of the party Cragg invention. *Id.* at 7. Party Cragg requested reconsideration of that decision claiming that the Board had erred in its ruling and claimed that Mintec filed the European applications as assignees of both Dake and Cragg, the co-inventors of the subject matter of the patent application.

On April 24, 2000, the Board issued a Decision on Reconsideration denying the request for reconsideration on the basis that Dake's assignment of his rights in the patent application came after the filing of the European application and that 35 U.S.C. § 119 could not be interpreted to allow Mintec the benefit of priority with this subsequent assignment of rights. *Cragg et al. v. Martin v. Fogarty et al.*, Patent Interference No. 104,192, Paper No. 138, Decision on Reconsideration (United States Patent and Trademark Office, Board of Patent Appeals and Inferences April 24, 2000)("Board's Decision on Reconsideration"). In

5

its decision, the Board interpreted Title 35 of the United States Code Section 119 to require that "the previously filed foreign application must have been filed by the person or one who was, <u>at the time of filing of the previously filed foreign application</u>, already a legal representative or assign of that person." *Id.* at 3. The Board went on to state that their interpretation of Section 119 "is necessary to ensure a link between the presently involved application and the earlier filed foreign application with respect to the particular inventor. A contrary interpretation would cause entitlement to benefit to be negotiable as a commodity between unrelated entities." *Id.* In essence, the Board rejected party Cragg's position on the assignment of rights to the patent and stated:

> We are unpersuaded that an assignment of ownership rights changes on whose behalf an application was previously already filed. It would appear that only filings subsequent to the assignment of rights from Michael D. Dake can be deemed as being executed or performed on his behalf.

*Id.* at 5. Party Cragg requested a final hearing for review of the Board's decision claiming that the Board had erroneously interpreted Section 119 and that Dake and Cragg were co-inventors and that Mintec SARL was the assignee of both Dake and Cragg for the subject matter invention even though the assignments occurred after the European patent applications were filed. *See id* at 11-23. On July 27, 2001, the Board issued its Final Decision and Judgment. *See* Board's Final Judgment.

In its Final Judgment, the Board adopted its earlier interpretation of 35 U.S.C.§ 119. *Id.* at 9. The Board cited *Vogel v. Jones*, 486 F.2d 1068, 1072 (C.C.P.A. 1973), for the proposition that "a foreign application made by the assignee of a U.S. applicant, on behalf

6

of one other that the United States inventor, is irrelevant to the rights of priority of the U.S.

inventor." *Id*. at 10. The Board stated that the "plain statutory language" of Section 119

does not put "an assignee in the same position as if it were a 'legal representative' or 'assign'

of the inventor at a previous time when a foreign application for the same invention was filed

by that assignee." *Id*. at 12. The Board found that Dake assigned his invention to Mintec,

Inc. more than two years *after* the filing of the two European patent applications. *Id*. at 11-

12. The Board went on to state, that even assuming that party Cragg's preliminary statement

identified both Cragg and Dake as co-inventors of the subject matter of the count, that fact

would not help party Cragg as "Cragg also did not assign his rights to Mintec, Inc. until

after" the two European patent applications were filed. *Id*. at 20. The Board found that

"MINTEC SARL was not an assign of either Michael D. Dake nor Andrew H. Cragg when

it filed European applications EP944oo284.9 and EP94401306.9." *Id*. For those reasons,

and others, the Board found that there was no error in the granting of party Fogarty's

preliminary motion 12. *Id*. at 23.

On September 25, 2001, Scimed filed this appeal under Title 35 of the United States

Code Section 146, seeking this Court's review of the Board's Final Decision and Judgment

in the '192 Interference. The parties to this action entered into a stipulation and order

limiting the issues in this case. The stipulated issue to be resolved is:

> Whether the Board erroneously affirmed its Grant of Fogarty *et al*. (Medtronic)
> Motion 12 in its July 27, 2001 Final Decision denying Cragg *et al*. (Scimed)
> benefit of the February 9, 1994 filing date of its European application No.

7

94400284.9 as a date of invention for the subject matter of the single count in
Interference No. 104,192.

(*See* Stipulation and Order entered March 25, 2004, Dkt. 50.)  On July 22, 2005, both parties

moved for summary judgment on this remaining issue and provided the Court with exhibits

supporting their positions.

## II.   STANDARD OF REVIEW

Summary Judgment is appropriate when the pleadings and the record demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex v. Catrett*, 477 U.S.

317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine

which facts are "material," a Court must look to the substantive law on which each claims

rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one

whose resolution could establish an element of a claim or defense and, therefore, affect the

outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.  Additionally,

to be a genuine issue of fact, it must be supported by sufficient admissible evidence such that

a reasonable trier of fact could find for the nonmovant. *See Laningham v. United States

Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

The moving party bears the initial burden of "identifying those portions of the

'pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material

fact." *See Celotex*, 477 U.S. at 323.  In order to prevail on its motion for summary judgment,

8

the movant must show that the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and 'admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The Court must view the facts in the light most favorable to the nonmovant, giving the nonmovant the benefit of all justifiable inferences derived from the evidence in the record. *Anderson*, 477 U.S. at 255 (1986). The nonmovant, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

In order for Scimed to prevail on summary judgment, Scimed must put forth evidence and legal support that meets the standard of proof this Court is required to apply when reviewing decisions of the Board of Patent Appeals and Interferences of the USPTO. In determining whether or not the Board erroneously affirmed its Grant of party Fogarty's preliminary motion 12 and, therefore, erroneously awarded priority for the subject matter of the single count in the '192 Interference to Medtronic, this Court will apply the standard of proof set forth in *Morgan v. Daniels*, in that when a decision has been made by the Patent Office in an action contesting priority of invention, "the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, <u>unless</u> the contrary is established by testimony which in character and amount *carries*

9

*thorough conviction.*" *Morgan*, 153 U.S. 120, 125 (1894) (emphasis added) (determining the standard of review for a Patent Office decision when no additional evidence was put forth to the Circuit Court). Our Circuit Court, in *United States v. Szuecs*, 240 F.2d 886 (D.C. Cir. 1957), upheld the *Morgan* standard of proof that must be applied by a District Court when reviewing a decision of the Patent Office pursuant to 35 U.S.C. § 146. "To reach a conclusion contrary to that of the Patent Office," the *Morgan* standard requires the evidence to carry "'thorough conviction.'" *Szuecs*, 240 F.2d at 887 (citing *Morgan*, 153 U.S. at 125) (reversing and remanding the case to the District Court to apply the correct standard of proof).

Another District Court Judge of this Court reaffirmed the application of *Morgan* in reviewing Patent Office cases under 35 U.S.C. § 146. *Anderson v. Anderson*, 403 F. Supp. 834, 844-45 (D.D.C. 1975) (affirming the decision of the Board of Patent Interferences after reviewing the full administrative record and hearing additional oral testimony), *aff'd*, 543 F.2d 1389 (D.C. Cir. Nov. 11, 1976). In *Anderson*, Judge John H. Pratt found that the "Patent Office is entitled to a presumption of correctness and regularity." *Id.* at 844 (citing *Vogel v. Jones*, 346 F. Supp. 1005 (D.D.C. 1972). Judge Pratt went on to reiterate that the District Court could not overturn the Board's decision unless the evidence put forth by the movant carried "thorough conviction," and "[t]he 'thorough conviction' standard imposes a heavy burden on plaintiffs in an action under 35 U.S.C. § 146," and that "[a] mere preponderance of the evidence is not enough to justify reversing the Patent Office." *Id.* at

845. For the following reasons, the Court finds that the plaintiff has failed to meet its heavy burden, and concludes that the Board did not err in its interpretation of Section 119.

## III.    ANALYSIS

### A.    *Interpretation of 35 U.S.C. § 119*

In the Board's Final Judgment, it reaffirmed its earlier decision that the "plain statutory language" of Section 119 requires that the person who filed the foreign patent application must have been a legal representative or assign of the person who filed the patent application in the United States <u>at</u> the time that the foreign patent application was filed.[5] Board's Final Judgment 9-10. The pertinent part of Section 119 reads:

> (a)  An application for patent for an invention filed in this country by any person who has, or whose legal representatives or assigns have, previously regularly filed an application for a patent for the same invention in a foreign country which affords similar privileges in the case of applications filed in the United States or to citizens of the United States, or in a WTO member country, shall have the same effect as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country.

35 U.S.C. § 119(a). The Board's interpretation of Section 119 is supported by *Vogel v. Jones*, 486 F.2d 1068 (C.C.P.A. 1973). *See* Board's Final Decision 10-11. In *Vogel*, the Court of Customs and Patent Appeal, the predecessor to the current Court of Appeals for the Federal Circuit, read Section 119 to mean "that an applicant for a United States patent can rely for priority on the 'first filed' application by an assignee on his behalf." 486 F.2d at

---

[5]    While counsel for Scimed is quick to point out its own grammatical analysis of Section 119 without citing to any grammar reference guide, the Court notes that it is quite capable of reading the statute, interpreting the language of the statute, researching the case law pertaining to the statute and applying that law to the present action.

1072.  In order for the foreign patent application to be filed on behalf of the United States applicant, the person filing the foreign application must be an assignee or legal representative *at the time* that the foreign application was filed.  *Id.*  If the foreign applicant was allowed to become the legal representative or assign of the United States applicant *after* the foreign application was filed, it would be impossible for the foreign application to have been filed *on the behalf* of the United States applicant.  If the Board or this Court held otherwise, the right of priority could be, as the Board noted, traded or sold as a commodity to the highest bidder.  *See* Board's Decision on Reconsideration 3; Board's Final Decision 9.  Therefore, this Court does not find that the Board erred in its interpretation of Section 119 and Scimed has neither cited any precedent or legislative history that would warrant interpreting the statute otherwise.[6]

---

[6]  Scimed argues that the Board's construction of Section 119 is inconsistent with the Paris Convention for the Protection of Industrial Property, *opened for signature* Mar. 20, 1883, as amended at Stockholm, July 14, 1967, 21 U.S.T. 1630, 828 U.N.T.S. 305 ("Paris Convention"), and asks this Court to find that the Board's erroneously construed Section 119 as the Board's construction is inconsistent with and violates Article 4 of the Paris Convention. While Section 119, and its predecessor R.S. 4887, were enacted in order to implement Article 4 of the Paris Convention, *Vogel*, 486 F.2d at 1072, the Board's construction of Section 119, which this Court finds correct, does not violate and is not inconsistent with the Paris Convention. The Paris Convention is not self-executing and, therefore, the U.S. was free to implement the Paris Convention in the manner and form that Congress deemed appropriate. *In re Dr. Matthais Rath*, 402 F.3d 1207, 1209-10 (Fed. Cir. 2005). Congress executed Article 4 of the Paris Convention first with R.S. 4887, and then with Section 119, and Section 119 requires that in order to claim a right of priority in a foreign application, the foreign application must have been filed by the U.S. applicant or a person or entity who was a legal representative or assign of the U.S. applicant <u>at</u> the time that the foreign application was filed. The concern expressed by Scimed that upholding the Board's construction of Section 119 would have in foreign countries is conjecture and "based on pure speculation." *See Kawai v. Metlestics*, 480 F.2d 880, 889 (C.C.P.A. 1973).

**B.**     *Review of Board's Decision*

Having found that the Board did not err in its reading and interpretation of Section 119, the question remains whether the Board erred in granting Medtronic's preliminary motion 12 seeking to deny Scimed the benefit of the filing date of its European patent applications. It did not. While a review by this Court of a Board's Final Decision is a "hybrid of an appeal and a trial de novo" because the Court considers evidence before the Board "as well as evidence that was not before the Board," *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1345 (Fed. Cir. 2000) (quoting *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 592 (Fed. Cir. 1997)), it nonetheless must treat the Board's decision as controlling "unless the contrary is established by testimony which in character and amount carries thorough conviction." *Morgan*, 153 U.S. at 125.

Scimed argues that the '284 European application was either filed on Dake's behalf "pursuant to the constructive trust imposed upon that application" when Mintec SARL filed the application, or a theory of an equitable assignment to party Cragg. (Scimed's Mem. of P&A in Opp'n to Medtronic's Mot. For Summ. J. 29, 35-36 ("Scimed's Opp'n"); Mem. of P&A in Supp. of Scimed's Second Mot. For Summ J. That Scimed is Entitled to the Priority of Its EP '284 Application Even Under the Board's Construction of 35 U.S.C. § 119(a) ) 31-33 ("Scimed's Second Mot. For Summ. J.".) As this Court earlier recognized, "[t]he Federal Circuit in *Conservolite [Inc., v. Widmayer]* held that a party's failure to raise the issue in a preliminary motion not only precluded it not from raising the matter at the final hearing, but

13

also precluded district Court review." *Scimed Life Systems, Inc. v. Medtronic AVE, Inc.*, 297

F. Supp. 2d 4, 8 (D.D.C. 2003) (citing *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102

(Fed. Cir. 1994)). The Federal Circuit has stated that "[i]n order for an issue to have been

raised adequately so that it qualifies for consideration in a § 146 proceeding, the issue should

have been raised as specified in the PTO's interference rules, for example, through

preliminary motions, motions to correct inventorship, miscellaneous motions, belated

motions delayed for good cause, or oppositions to these motions." *Conservolite*, 21 F.3d at

1102. Therefore, Scimed is precluded from arguing that the Board erred in denying priority

to Scimed either under the newfound constructive trust or equitable assignment theories

advanced before this Court.

Thus, applying the *Morgan* standard of proof to this review and not having conducted

a *de novo* review as in *Winner*, the Court finds that Scimed has not presented sufficient

evidence that Mintec SARL was either the legal representative or assign of Dake or Cragg

*at* the time that the relevant European patent applications were filed. Accordingly, party

Cragg and Scimed cannot claim the benefit of priority of the European patent applications.

Therefore, this Court finds that the Board did not err in its granting of party Fogarty's

(Medtonic's) motion No. 12 which denied Cragg *et al.* (Scimed) the benefit of the earlier

filing date of European application No. 94400284.9 and affirms the Board's award of priority

to Fogarty *et al.* (Medtronic) in its July 27, 2001 Final Decision and Judgment.

14

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS defendant and counterclaim-plaintiff Medtronic's Motion for Summary Judgment [#100]; DENIES Plaintiff and counterclaim-defendant Scimed's First Motion for Summary Judgment [#102]; DENIES Plaintiff and counterclaim-defendant Scimed's Second Motion for Summary Judgment [#103]; and DENIES AS MOOT defendant and counterclaim-plaintiff Medtronic's Motion to Compel Production of Documents and Things [#76].   An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge